Daniel Remer Esq. (SBN 83702)
33 Los Pinos
Nicasio, CA 94946
Telephone: (415)235-3202
Facsimile (415)276-9857
Email dan@danielremer.com

Howard Smukler (SBN 135957)
532 S. Coronado St. #304
Los Angeles, CA 90057
Telephone: 925-900-3440
hsmukler@gmail.com

Attorneys for Plaintiff: EDWARD MILLER

# IN THE U.S. DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| EDWARD MILLER )<br>)<br>    Plaintiff, )<br>)<br>v. )<br>)<br>APPTIO, INC., and )<br>CLOUDABILITY, INC. )<br>)<br>and )<br>)<br>DOES 1 through 5 )<br>)<br>    Defendants. ) | **CASE NO.:**<br>**19-CV-7762**<br><br>**PLAINTIFF EDWARD MILLER'S OPPOSITION TO MOTION TO DISMISS FIRST AMENDED COMPLAINT PURSUANT TO F.R.C.P. 12(b)(1) AND 12(b)(6)**<br><br>Hon. Judge Haywood S. Gilliam, Jr.<br><br>**Hearing Date:**<br><br>**Action Filed: 11/26/2019** |

**TABLE OF CONTENTS**

I. PROCEDURAL BACKGROUND ................................................................................ 4

II. FACTS NOT IN DISPUTE ........................................................................................ 4

III. ISSUES RAISED IN THE 2ndMtoD.......................................................................... 5

IV. LEGAL STANDARDS GOVERNING A MOTION TO DISMISS…..………………… 5

V. ARGUMENTS IN SUPPORT OF THE 1st AMENDED COMPLAINT………...……….. 6

    1. APPTIO HAS LIABILITY FOR CLOUDABILITY'S MISREPRESENTATION…….. 6

        A. MILLER did not have personal contact with APPTIO……………………………. 6

        B. Special circumstances impose liability on APPTIO…………………………….. 6

            1. APPTIO has liability based on the Acquisition Agreement with Cloudability……. 6

            2. APPTIO has liability as the result of a merger with Cloudability…………………7

            3. PLAINTIFF should be allowed to amend his complaint………………………….. 8

    2. PLAINTIFF'S FRAUD CAUSES OF ACTION SHOULD NOT BE DISMISSED…... 8

        A. The Integration Clause Supports the Materiality of the CARTA document………… 8

            1. The Carta Document is a "document delivered pursuant" to the Warrant……….. 9

            2. The Carta electronic document was a valid amendment to the original Warrant… 9

        B. Defendants admit that they made a "mistake"……………………………………… 10

    3. PLAINTIFF PLED FRAUD WITH SUFFICIENT SPECIFICITY…………………… 11

        A. 1st Amended Complain identifies the "time, place and content" of the fraud……… 11

        B.  Miller relied on the Carta Warrant Document beginning on September 30, 2018… 12

        C.  Cloudability had the required scienter to commit the fraud……………………….. 13

        D.  Cloudability intended for Miller to rely on the Carta Warrant Document………… 14

    4. ATTORNEY FEES SHOULD BE AWARDED TO PLAINTIFF……………………. 15

VI. CONCLUSION ........................................................................................................15

# TABLE OF AUTHORITIES

**FEDERAL CASES**

*Biggins v. Wells Fargo & Co*., 266 F.R.D. 399, 413-14 (N.D. Cal. 2009)…………………………8

*In re Capacitors Antitrust Litigation,* 106 F.Supp.3d 1051 (N.D. Cal. 2015) ............................ 7

*Manzarek v. St. Paul Fire & Marine Ins. Co.,* 519 F.3d 1025, 1031 (9th Cir. 2008)……………. .6

*No Cost Conference  v. Windstream Commc'ns,* 940 F. Supp. 2d 1285, 1299 (S.D. Cal. 2013).. 7

*Rescuecom Corp. v. Google Inc*. (2nd Cir. 2009) 562 F3d 123, 127……………………………. 6

*United States v. Bestfoods*, 524 U.S. 51, 61 (1998)…………………………………………….. 6

*Wal-Mart Stores, Inc*., (2009) 588 F.3d 585, 2009 (8th Cir. Mo).……………..……………...... 6

**CALIFORNIA STATUTES**

Civil Code §1654: Interpretation of Contracts: In cases of uncertainty not removed by the preceding rules, the language of a contract should be interpreted most strongly against the party who caused the uncertainty to exist.

# I. PROCEDURAL BACKGROUND

Plaintiff MILLER filed the Complaint on November 27, 2019 against DEFENDANTS APPTIO and CLOUDABILITY. DEFENDANTS filed their 1st Motion to Dismiss the Complaint on January 29, 2020. ("1stMtoD") In response, PLAINTIFF filed his 1st Amended Complaint ("1stAC") as a matter of course on February 14, 2020. DEFENDANTS then filed their 2nd Motion to Dismiss the 1st Amended Complaint on February 24, 2020. ("2ndMtoD")

PLAINTIFF made a concentrated effort to address every objection raised in the 1st Motion to Dismiss by specifically adding extensive specificity to its 1stAC. Nevertheless, DEFENDANTS submitted a 2ndMtoD which is substantially identical to their 1stMtoD and ignores the significant changes that MILLER made in his 1stAC.

# II. FACTS NOT IN DISPUTE

The 1stAC describes in detail the background of the case in paragraphs 9 to 23. The majority of the facts are accepted by both parties as true. Specifically,

A WARRANT was issued to MILLER on April 12, 2016 for 30,000 shares to be exercised within a 3-year period before April 12, 2019. (1stAC at ¶9)

On or about October 4, 2017 and again on September 30, 2018, CLOUDABLITY instructed and required MILLER to use the Carta software system to manage the WARRANT. MILLER was further instructed to agree to this new requirement by signing an electronic document that specifically included a document entitled "Warrant CSW-003." (1stAC at ¶¶11, 13 and 14  (Copy of "Warrant CSW-003" attached to Exhibit B of 2ndMtoD)

The Carta Warrant CSW-003 document which MILLER was required to sign included a new exercise date with a 10-year period expiring on April 12, 2026. (1stAC at ¶¶ 14 and 16)

On or about May 19, 2020, MILLER referred to the 10-year expiration period on the Carta Warrant CSW-003 document and sent a screen shot of the referenced document to Cloudability. (1stAC at ¶18 and Email attached to Exhibit B of the 2ndMtoD)

On or about May 20, 2020 CLOUDABLITY through their attorney, changed back the expiration date as shown on Carta from the 10-year expiration date to a 3-year period with expiration. The attorney did not notify Miller of the change. In fact, the attorney attempted to trick Miller by saying via email, "I have confirmed that Carta reflects the terms of the actual warrant", rather than admitting he had made the change just hours before. (1stAC at ¶ 19)

### III. ISSUES RAISED IN THE 2ndMtoD

1. Should Apptio be dismissed as a DEFENDANT for lack of personal jurisdiction?
2. MILLER'S claims for fraud lack specifics.

As discussed below, MILLER's 1stAC was enhanced and updated to specifically address the objections raised in the 1stMtoD and the 2ndMtoD. Every objection raised by DEFENDANTS has a corresponding allegation in the 1stAC which was drafted to directly refute DEFENDANTS's arguments.

### IV. LEGAL STANDARDS GOVERNING A MOTION TO DISMISS

Neither party disputes the legal standards for a Motion to Dismiss. The difference lies in the focus. MILLER emphasizes that allegations are to be taken as true while DEFENDANTS argue for greater specificity of facts. In light of the fact that there has been NO FORMAL DISCOVERY, the Rules of Federal Procedure support MILLER's pleadings which contain as much information as he had available at the time of filing.

In responding to 2ndMtoD, Plaintiff has three distinct advantages in opposing a Rule 12(b)(6) Motion to Dismiss. First, the court must "accept as true all of the factual allegations set out in plaintiff's complaint. Second, it must draw inferences from those allegations in the light

most favorable to plaintiff. Finally, it must construe the complaint liberally." [*Rescuecom Corp. v. Google Inc*. (2nd Cir. 2009) 562 F3d 123, 127]

Defendant refers to *Iqbal* and similar cases to imply that the long standing advantages afforded to plaintiffs no longer apply. But on the contrary, "*Iqbal* did not change this fundamental tenet of Rule 12(b)(6) practice." (*Wal-Mart Stores, Inc*., (2009) 588 F.3d 585, 2009 (8th Cir. Mo.) In fact the 2ndMtoD reaffirms PLAINTIFF's position stating "In reviewing the plausibility of a complaint, courts "accept factual allegations in the complaint as true and construe the pleadings in the light most favorable to the nonmoving party." *Manzarekv. St. Paul Fire & Marine Ins. Co*.,519 F.3d 1025,1031 (9th Cir. 2008). (2ndMtoD, 5:13)

## V. ARGUMENTS IN SUPPORT OF THE 1st AMENDED COMPLAINT

### 1. APPTIO HAS LIABILITY FOR CLOUDABILITY'S MISREPRESENTATION

#### A. MILLER did not have personal contact with APPTIO.

DEFENDANTS correctly state that MILLER did not have personal contact with APPTIO and that APPTIO did not have direct involvement in the alleged misrepresentation.

Instead, PLAINTIFF's claim that APPTIO has liability based on the fact that APPTIO acquired CLOUDABILITY and that CLOUDABILITY merged with APPTIO.

#### B. Special circumstances impose liability on APPTIO.

DEFENDANTS correctly state the general principle of corporation law that a parent corporation is not liable for the acts of its subsidiaries." (*United States v. Bestfoods*, 524 U.S. 51, 61 (1998). That said, the cases cited by DEFENDANTS list two "special circumstance" in which liability may be imposed. Both circumstances apply to the facts of this case.

1. APPTIO has liability based on the Acquisition Agreement with CLOUDABIITY.

DEFENDANTS specifically recognize that APPTIO'S liabilities may be dependent on elements "such as contractual terms establishing such an obligation." (2ndMtoD 10:19) The

Acquisition Agreement could have terms "which establish the obligation in issue", specifically an express or implied agreement of assumption of liability. (*In re Capacitors Antitrust Litigation* cited in the 2ndMtoD)

The question of APPTIO's liability might be resolved in part, if DEFENDANTS would produce a copy of the Acquisition Agreement. Despite repeated requests from PLAINTIFF, they have refused to disclose the Agreement. They did not attach the Agreement as an Exhibit to either of their Motions to Dismiss. While discovery has not begun, Defendant's refusal to shed light on the matter should not result in a disadvantage to Plaintiff.

PLAINTIFF can allege on "information and belief" that the Acquisition Agreement contains a clause in which both the assets and liabilities of CLOUDABILITY are assumed by APPTIO. Without production of the original Acquisition Agreement as ultimate proof, that allegation must be accepted as true by the court in this proceedings. PLAINTIFF believes that the reason DEFENDANTS have not produced the Agreement is because it supports PLAINTIFF's claim that APPTIO has contractually assumed liability for CLOUDABILITY's misrepresentations.

2. APPTIO has liability as the result of a **merger** with CLOUDABILITY.

Successor liability transfers from CLOUDABILITY to APPTIO if the acquisition "transaction amounts to a merger or consolidation of the corporations." (See *In re Capacitors Antitrust Litigation,* cited in the 2ndMtoD)

Numerous examples are given of elements of a merger which would transfer liability. Such events as combining of customers, integration of products, unified invoicing systems and other factual elements which "set about on a course of actions aimed at causing [one party's] customers ... to believe that [they were] now part of [the other company.] (*No Cost Conference, Inc. v. Windstream Commc'ns, Inc.*, 940 F. Supp. 2d 1285, 1299-1301 (S.D. Cal. 2013))

Numerous press releases and website references (see for example: https://www.geekwire.com/2019/apptio-buys-portlands-cloudability-adding-cloud-financial-analysis-tools-belt/) all indicate that APPTIO and CLOUDABILITY merged! Not one says or implies that Cloudability will remain a separate company. On information and belief, the products of the two companies were integrated, the software research departments were consolidated and the public was informed that the APPTIO product line had now been enhanced by the addition of CLOUDABLITY software.

PLAINTIFF alleges that when proper discovery is initiated it will be clearly shown that APPTIO has "continued as the surviving corporation of the merger" a condition for APPTIO to assume the liabilities of CLOUDABLITY. (*No Cost Conference, Inc. v. Windstream Commc'ns, Inc.*, 940 F. Supp. 2d 1285, 1299-1301 (S.D. Cal. 2013))

<u>3, PLAINTIFF should be allowed to amend his complaint.</u>

DEFENDANTS correctly cite to *Biggins v Wells Fargo & Co.* for the proposition that making mere statements about alleged conduct are insufficient to support a claim against a parent company. However, the Biggins opinion concluded that "because the Court cannot say that Plaintiff could not allege facts to establish [the allegations] they shall be given leave to amend these claims on the terms set forth in this order (*Biggins v. Wells Fargo & Co*., 266 F.R.D. 399, 413-14 (N.D. Cal. 2009).

Accordingly, PLAINTIFF believes that if necessary based on the arguments above, it will be able to amend his Complaint to allege specific actions by the DEFENDANTS which will place liability upon APPTIO for acts of misrepresentation by CLOUDABILITY.

**2. PLAINTIFF'S FRAUD CAUSES OF ACTION SHOULD NOT BE DISMISSED**

**A.  <u>The Integration Clause Supports the Materiality of the CARTA document.</u>**

The Warrant has a two-part Integration Clause that freely allows the amendment of the Warrant. It states in part (emphasis added):

> **19. Entire Agreement; Amendments and Waivers.** *This Warrant and any other documents delivered pursuant hereto constitute the full and entire understanding and agreement between the parties with regard to the subjects hereof and thereof. <u>Nonetheless, any term of this Warrant may be amended and the observance of any term of this Agreement may be waived (either generally or in a particular instance and either retroactively or prospectively), with the written consent of the Company and the Holder;</u>* (2ndMtoD: 7:4-9)

**1. The Carta Document is a "document delivered pursuant" to the Warrant.**

The first part of Section 19 of the Warrant is known as a "partial integration" clause because it provides for documents "delivered pursuant" to the originally signed Warrant. On the other hand, "full integration" clauses use terms such "the writing constitutes the sole and exclusive agreement" (Murray on Contracts § 85 (5th ed. 2011). The initial Cloudability Warrant Integration Clause explicitly permits and contemplates subsequent "documents delivered pursuant" to the Warrant.

The Warrant Integration Clause was drafted by Defendants' attorneys and accordingly should be interpreted against their interests. (CCP 1654) The Warrant's partial integration clause is specifically designed for Agreements which anticipate subsequent documents which may be produced "with regard to the subjects [matter]" of the original agreements.

The Warrant Integration Clause (as is common in security agreements https://www.sec.gov/Archives/edgar/data/1602078/000107997315000686/ex4x1.htm) was specifically drafted to anticipate the planned use of a third-party software platform such as Carta. As a result of this special drafting, the Carta electronic Warrant information that was relied upon by Miller was incorporated into and became part of the original Warrant.

**2. The Carta electronic document was a valid amendment to the original Warrant.**

The second part of the Warrant Integration Clause provides that "*any* term of this Warrant may be amended" (even "*prospectively*") with the written consent of the Company and the Holder.

It has been repeatedly alleged that twice on October 4, 2017 and again on September 30, 2018, CLOUDABIITY submitted to Plaintiff, via its agent Carta, a copy of the Warrant with a material change in terms from a 3-year period to a 10-year period. Plaintiff was required to "Accept your Warrant" and confirm with "your electronic signature." (1stAC at ¶¶14 and 27) For additional specificity, Plaintiff was provided a screenshot of the relevant Carta document with the term "<u>Warrant</u> CSW-003" in the upper left-hand corner. (1stAC at page 8)

The Defendants have <u>never</u> denied that: a. on 9/30/2018 a copy of the Warrant was submitted to Plaintiff via Carta; b. the Carta version of the Warrant contained a screenshot identified as "Warrant csw-003" with a 10-year expiration period; and c: Plaintiff signed the amended Carta document.

These 3 steps alleged in 1stAC at §14 conform exactly to the required amendment procedure described in the Warrant Integration Clause §19 that was drafted by the Defendants.

**B.  Defendants <u>admit that they made a "mistake"</u>.**

Defendants' 2nd Motion to Dismiss concentrates exclusively on the fraud causes of action in the 1st Amended Complaint. They not only ignore the negligent misrepresentation cause of action, but they admit that they made a "mistake", <u>essentially admitting negligence</u>. In fact, the 2nd Motion to Dismiss uses the word "mistake" 14 times in referring to the Carta Warrant Document.

A good example of this characterization can be found in the first footnote on page 5 where it says: *"The <u>mistaken</u> display of a ten-year exercise period on Carta was not fraud. Nor was it fraudulent to correct Carta in order to accurately display the warrant's three-year term*

*after Miller brought the <u>mistake</u> to Defendants' attention." (emphasis added)* Or *"Taken collectively, [Plaintiff's allegations] fail to show that the information displayed on Carta was fraudulent – as opposed to <u>mistaken</u>."* (2nd MtoD:13:1-2)

The "mistake" was made exclusively by Defendants. Miller did not choose Carta, he did not input the 10-year period of expiration, he did not load the "Warrant CSW-003" document onto Carat. Defendants made all of those "mistakes"!

All that Miller did was follow Defendants' requirements to "Accept" and rely on the Carta documents and electronically sign them, which he did on September 30, 2018. It bears repeating that Miller opened, viewed, accepted and signed the "mistaken" Carta document 6 months BEFORE the 3-year period of expiration stated in the original Warrant. (1stAC: ¶17)

### 3. PLAINTIFF PLED FRAUD WITH SUFFICIENT SPECIFICITY

Defendants filed a 1st Motion to Dismiss claiming that the Complaint lacked sufficient details to support the allegations of fraud. Plaintiff then respond with a 1st Amended Complaint which in greater detail addressed <u>all</u> of the arguments previous raised in the 1st Motion to Dismiss. Defendants filed a 2nd Motion to Dismiss with almost no recognition of the changes Plaintiff made in their 1st Amended Complaint.

The following is an analysis of how the 1st Amended Complaint added greater detail and sufficient specificity to the fraud causes of action.

**A. 1st Amended Complain identifies the "time, place and content" of the fraud.**

The fraud began on October 4, 2017 when CLOUDABLITY input the 10-year expiration period into Carta. (1stAC: ¶12) MILLER first observed this Carta Warrant Document in his California office on September 30, 2018 (1stAC: ¶14) MILLER thereafter relied on the Carta Warrant Document, as required by Defendants, and had a reasonable belief that the Warrant expired on April 12, 2026 (1stAC: ¶17) On or about May 19, 2019 an attorney for Cloudability

intentionally changed the Carta Warrant Document to a 3-year expiration period. (1stAC: ¶19) On or about May 20, 2019, the same Cloudability attorney led Miller, by email, to believe that not only had he not changed the date, but that the (new) date was correct. (1stAC: ¶19)

All the elements of the fraud were alleged repeatedly in detail in the 1st Amended Complaint and Defendants had more than sufficient information to put them on notice of the charge being made against them in the case.

**B. Miller relied on the Carta Warrant Document beginning on September 30, 2018.**

Defendants falsely assert that Miller fails to demonstrate that he was aware of the Carta "amendment" prior to the 3-year exercise period of April 12, 2019. (2ndMtoD: 15:21-21)

The 1st Amended Complaint specifically alleges that "As intended by Defendants, on or about September 30, 2018 to May 19, 2019 Plaintiff viewed, signed and relied on the 10-year expiration period as displayed by Carta on the computer screen in his California office. Accordingly, Plaintiff had a reasonable belief long before the 3-year date had passed, that he had a 10-year period from the Issue Date with an expiration on April 12, 2026 in which to exercise the Warrant. (1stAC at ¶17).

Miller repeatedly alleges that he was aware of the Carta Warrant Document as early as September 30 2018 and relied upon the 10-year expiration date of 2026. (1stAC: ¶¶ 13, 14, 16, 17, 31) The Carta Warrant Document was drafted by Cloudability a should be interpreted against their interest. (CCP 1654)

**C. Cloudability had the required scienter to commit the fraud.**

CLOUDABLITY argues that there is no evidence that it had the necessary intent to commit fraud. Instead they claim that the "information displayed on Carta" was merely a mistake or "an inadvertent clerical error." (2ndMtoD: 12:1-4)

In the absence of discovery and a deposition of the Cloudablity attorney who inputted the Carta Warrant Document with the 10-year expiration period, MILLER can only allege fraud on information and belief. (1stAC ¶¶ 28, 29, 37, 38) That said, the actions of the Cloudability attorney on May 19, 2019 to first change back the 10-year period to a 3-year period and then on May 20, 2019 to attempt to trick MILLER into believing that the date had not been changed and that it was three rather than ten years, are extremely strong indications of improper behavior, especially by an attorney.

Why would the Cloudablity attorney input a 10-year expiration period? The 2nd Motion to Dismiss argues that the reason was "mistake" (2ndMtD: 12:1-4) but the reason could also be as alleged in the 1st Amended Complaint that Cloudablity simply intended to deny MILLER the "money owed to him." (1stAC: ¶3 and ¶42) Simply stated, the actions of the Cloudablity attorney saved Cloudablity at least $75,000, subject to discovery.

As further indication of fraudulent intent the 1st Amended Complaint identifies specific behavior by the Cloudability attorney which has not been denied in the 2nd Motion to Dismiss. Specifically, the Carta Warrant document was changed back from a 10-year period to a 3-year period and then the attorney essentially covered up having made the change. (1stAC: ¶30)

Why would the Cloudability attorney change the Carta Warrant Document and then try to cover it up? The 2nd Motion to Dismiss argues that this action was merely "correcting the mistaken display" and proof that Cloudablity did not intend to amend the terms of the Warrant." (2ndMtoD: 15:23-24). In the absence of discovery this is nothing more than a self-serving justification for clearly an improper act.

On May 19, 2019 when Miller first notified Cloudability of the Carta problem, Cloudability's lawyer was not aware that Miller had evidence in the form of a screenshot of the 10-year Carta Warrant Document. Miller argues that Cloudablity changed the Carta Warrant

Document and subsequently covered up making the change because they did not know that a screenshot of the 10-year Warrant period existed. (1stAC: ¶30) Miller's production of the 10-year Warrant screenshot (1stAC: Page 8)

Cloudability now argues 14 times in its 2nd Motion to Dismiss that the Carta Warrant Document was a "mistake" and not fraud. (2ndMtoD: Footnote 1) This was not Cloudability's position on May 19, 2019. On that date, an attorney for Cloudablity realizing that he had been caught in a fraudulent act, quickly changed the Carta Warrant Document back to a 3-year expiration period and then covered up making the change, further confirming his improper actions and motivations.

**D. Cloudability intended for Miller to rely on the Carta Warrant Document.**

CLOUDABILITY argues that the 1st Amended Complaint did not plead particular facts showing that Defendants' intent to induce Miller's reliance on the Carta information. (2ndMtoD: 14:22.)

This claim is clearly false as CLOUDABILITY took numerous actions to require MILLER to rely on the Carta information. Specifically,

1. Cloudablity required Miller to use Carta (1stAC: ¶11 ),

2. Cloudability inputted a Carta Warrant Document entitled "Warrant-CSW-003" (1stAC: page 8)

3. On October 4, 2017 and September 30, 2018, Cloudabiliity required and then reminded Miller to "accept" the Carta information by affixing his electronic signature. (1stAC: ¶17)

4. Believing that Miller did not have proof of a 10-year Carta Warrant document, Cloudability changed the Carta document and then covered up making the change. (1stAC: ¶19)

If Cloudability did not want Miller to rely on the Carta Warrant Document why was it created, why was Miller twice instructed to sign the document and most importantly why did the Cloudability attorney change the Carta Warrant Document and try to trick Miller into thinking there had been no change?

**4. ATTORNEY FEES SHOULD BE AWARDED TO PLAINTIFF.**

It should be noted that if the Court determines that Plaintiff was damaged by his reliance upon Defendants' "mistake", then attorney fees should be awarded to Plaintiff. ¶18 of the Warrant Agreement specifically provides for attorney fees and costs to the prevailing party. As the Defendants admit in their Motion to Dismiss, they made a "mistake" and that Miller had to appeal to this court to correct their mistake. The cost of this lawsuit should be borne by the party that made the mistake (Defendants) in accordance with ¶18 of the Warrant Agreement, a clause which was drafted by Cloudablity and interpreted against their interest (CCP 1654).

**IV. CONCLUSION**

The facts of this case are neither complicated nor in dispute. Clearly, there is a Carta Warrant Document which Cloudability has drafted, which Miller has viewed and signed and which states that the expiration date of the Warrant is April 12, 2026. A screenshot of that document was been included in the 1st Amended Complaint on page 8. Whether that document was the result of negligence or fraud is a question for the trier of fact at trial and not to be determined by a Motion to Dismiss at this early pre-discovery stage of the proceedings.

/S/   DANIEL REMER, ESQ.

Attorney for Plaintiff  EDWARD MILLER